UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA L. SCHOLS, | ) |
|     Plaintiff, | ) No. CV-10-253-CI |
| v. | ) ORDER GRANTING PLAINTIFF'S |
| MICHAEL J. ASTRUE, | ) MOTION FOR SUMMARY JUDGMENT |
| Commissioner of Social Security, | ) |
|     Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 19, 21.) Attorney Maureen J. Rosette represents Rebecca L. Schols (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) on March 4, 2004, and Supplemental Security Income (SSI) on March 5, 2004. (Tr. 83-85; 236-38.) She alleged disability due to "knee problems, degenerative joint disease, right leg, hips and back." (Tr. 121.) She ultimately alleged an onset date of February 13, 2004.[1] (Tr. 36; 265.) Her claim was denied initially and on

---

[1] Plaintiff initially alleged an onset date of June 1991, the date of the original injury to her knee. At the administrative

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

reconsideration. (Tr. 57-58; 61-64.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on September 6, 2006, before ALJ Richard Say. (Tr. 243-66.) At the hearing, vocational expert Thomas Moreland and Plaintiff testified. (Tr. 246-65.) The ALJ denied benefits on September 13, 2006. (Tr. 36-42.)

The Appeals Council vacated the ruling, and remanded to the ALJ to (1) provide specific reasons to support a negative credibility finding for Plaintiff; (2) perform an adequate evaluation of Dr. Yurasek's opinion, and re-evaluate Plaintiff's maximum sustainable residual functional capacity; (3) address the State Agency consultant opinions that Plaintiff could perform reduced light work and carry 20 pounds occasionally and 10 pounds frequently; (4) resolve the inconsistency between the DOT that indicated a cashier job was light and the Vocational Expert testimony that the job could be performed as sedentary; and (5) if necessary, obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's orthopedic impairments. (Tr. 45-47.)

The second hearing was held on March 25, 2008, before ALJ Richard Say. (Tr. 267-81.) At that hearing, Plaintiff and Vocational Expert Deborah LaPoint testified. (Tr. 270-81.) The ALJ denied benefits on April 25, 2008. (Tr. 19-28.) The Appeals Council denied review. (Tr. 7-9.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

---

hearing, she amended her onset date to the date she last worked, or February 13, 2004. (Tr. 36; 265.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the second hearing, Plaintiff was 31 years old. (Tr. 271.) She earned a GED in 1994. (Tr. 246.) Plaintiff lives in a house with her husband and five children, ages 18 to four years old. (Tr. 247.) Plaintiff testified that her knee trouble began with a 1991 horseback riding incident when "a tree limb puncture[d] the skin and underneath the kneecap tearing the bursa sac out of my knee." (Tr. 248.) As a result, she had several knee surgeries over the years. (Tr. 250-51.) Nevertheless, Plaintiff worked driving combines, as a construction flagger, cashier checker, and as a stockroom worker. (Tr. 248-49; 260.) Plaintiff testified that she was training to become a secretary when she realized she was unable to handle the physical requirements of the job. She could not crouch or kneel as was necessary to complete filing. (Tr. 250.) She reported the most significant pain is in her lower back. (Tr. 250.) Plaintiff testified that on a good day, she can barely bathe and dress herself without help. On a bad day, she does not get out of bed because she cannot feel her feet, and she tends to collapse. (Tr. 251.) Plaintiff stated that she loses feeling in her feet throughout the day. (Tr. 251.) Plaintiff also testified that she has to elevate her knee three to four times per day, for fifteen to twenty minutes at a time to reduce the swelling. (Tr. 255.) Plaintiff said she begins meal preparation, and her teenaged children finish it. (Tr. 251.) Plaintiff testified that her involvement with the laundry consists of turning on the machines, and folding the clothing that her husband and children carry to her. (Tr. 252.) Plaintiff said

she never shops alone, can drive a car a short distance, she cannot sit longer than ten to fifteen minutes and she cannot stand and walk for longer than fifteen or twenty minutes without stopping to rest. (Tr. 252-53.)  Plaintiff testified that she does not leave the couch or her bed when she is alone, because she fears falling. (Tr. 257-58.)

## ADMINISTRATIVE DECISION

ALJ Richard Say found Plaintiff's date of last insured for DIB purposes was September 30, 2005. (Tr. 21.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 13, 2004, the alleged onset date. (Tr. 21.) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative joint disease of the right knee status post injury in 1991, status post arthroscopy times three; (2) leg length discrepancy; and (3) back pain. (Tr. 21.)  The ALJ determined at step three Plaintiff's medically determinable impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings).  (Tr. 24.)  The ALJ found that Plaintiff has the residual capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 616.967(a), "except she can only occasionally engage in stooping, climbing ramps or stairs, and using foot pedals.  She should avoid climbing ladders, ropes, or scaffolds, crouching, crawling, and kneeling.  She must avoid hazards such as heights and moving machinery and should avoid activities involving vibration." (Tr. 24.)  The ALJ found Plaintiff's subjective complaints regarding functional limitations were not fully credible. (Tr. 25.)  He found that Plaintiff was unable to perform any past relevant work.  (Tr.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

26.) The ALJ concluded that Plaintiff could work as a telemarketer or cashier. (Tr. 27.) The ALJ found that Plaintiff's impairments and sedentary RFC would reduce the numbers of cashier positions by ten percent. (Tr. 27.) The ALJ ultimately found Plaintiff was not disabled from February 13, 2004, through the date of his decision (April 25, 2008). (Tr. 27-28.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will

still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d

920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff contends that the ALJ erred by improperly weighing the medical evidence and by discrediting her testimony. (ECF No. 20 at 9-14.) Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. (ECF No. 22.)

**DISCUSSION**

**1.   Medical Opinions**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not

contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

On remand, the Appeals Council directed the ALJ to provide rationale with specific references to the record in support of Plaintiff's assessed limitations. This included evaluating, treating, examining and reviewing source opinions, and the Council advised the ALJ to request treating and examining sources to provide additional evidence and/or further clarification about what the Plaintiff can still do despite the impairments. (Tr. 46.) Additionally, the Appeals Council directed that if necessary, the ALJ should obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's orthopedic impairments. (Tr. 46.)

In this case, Plaintiff argues the ALJ did not set forth specific and legitimate reasons supported by substantial evidence in rejecting the opinions of Karen Schaaf, M.D., and Maria Yurasek, M.D. Dr. Schaaf treated Plaintiff between 2004-06. (Tr. 181-87;

204-22.) The ALJ discounted Dr. Schaaf's February 15, 2005, note asserting Plaintiff could not perform sedentary work due to pain because Dr. Schaaf failed to identify any change in Plaintiff's condition, or explain how her condition had deteriorated since June 15, 2004, when Dr. Schaaf previously indicated Plaintiff could perform sedentary work. (Tr. 25; 187-88.) While the ALJ is correct that the record contains no explanation to support Dr. Schaaf's February 2005 change in opinion, the Appeals Council specifically directed the ALJ to request additional evidence from source opinions and/or clarification about Plaintiff's impairments. The ALJ failed to do so, and therefore his reliance upon the absence of evidence to reject Dr. Schaaf's opinion is error.

The ALJ also concluded that both Dr. Schaaf's and Dr. Yurasek's diagnoses were contradictory to the MRI and x-ray imaging studies.[2] (Tr. 25; 189; 218-19.) The record indicates Dr. Schaaf treated Plaintiff, reviewed her test results and concluded Plaintiff suffered from arthritis of the lumbar spine L3-4, L4-5, noting that the MRI confirmed Plaintiff's mid and lower lumbar as the area of facet joint inflammation. (Tr. 211.) The ALJ rejected Dr. Schaaf's diagnosis, and asserted that the September 2005 MRI of the lumbar spine showed mild degenerative changes and the July 21, 2004, hip x-rays were negative. (Tr. 25; 189; 218-19.) The ALJ concluded that Dr. Schaaf's diagnosis was "inconsistent with imaging studies."

---

[2]The ALJ references "1F/6-7" as knee x-ray results. It is likely the ALJ intended to refer to the 2001 and 2003 x-rays that revealed "mild degenerative joint disease" and "minimal degenerative change." (Tr. 155-56.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

(Tr. 25.)

Similarly, the ALJ rejected Dr. Yurasek's diagnosis, on the basis that it was inconsistent with the objective medical evidence. (Tr. 25.) The record reveals Dr. Yurasek examined Plaintiff in December 2004, reviewed her records and concluded Plaintiff has right knee pigmented villonodular synovitis, as well as sclerosis of the tibia, and degenerative joint disease affecting the hips. (Tr. 173-74.) However, the ALJ discounted Dr. Yurasek's diagnosis on the basis that it was inconsistent with the x-rays: "Dr. Yurasek diagnosed degenerative joint disease of the hips, yet x-rays were normal. Lumbar spine MRI showed only mild degenerative changes and does not support the severe range of motion limitations set forth by Dr. Yurasek." (Tr. 25-26.)

An ALJ may not substitute his interpretation of laboratory reports for that of a physician. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). "An ALJ is not free to set his own expertise against that of a physician who presents competent evidence." *Id.*, 765 F.2d at 37. Further, an ALJ may not act as his own medical expert, substituting his opinion for a professional interpretation of the clinical testing. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); see also *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms"); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998) ("'[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . .'" (Citations omitted)); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ

"must not succumb to the temptation to play doctor and make [his] own independent medical findings").

In this case, it was inappropriate for the ALJ to reject both Dr. Schaaf and Yurasek's findings by substituting his own medical conclusions for that of two physicians, particularly where the ALJ did not seek the testimony of a medical expert. See *Tackett*, 180 F.3d at 1102-03 (9th Cir. 1999) (inappropriate for an ALJ to substitute his own medical judgment for that of a treating physician).

To the extent the ALJ found Dr. Schaaf or Dr. Yurasek's respective diagnoses ambiguous or otherwise inadequate, it was incumbent upon the ALJ to contact these physicians as the Appeals Council advised, or call a medical expert to assist in determining the extent to which the medical records reflected limitations on Plaintiff's ability to work. See *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (although plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); See, *also, Ferguson*, 765 F.2d at 37 ("if the ALJ believed that Dr. Scott's reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician"). Additionally, where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination. See 20 C.F.R. §§ 404.1519a, 416.919a.

Since the ALJ's residual functional capacity assessment is predicated, at least in part, on his conclusions that lack

substantial evidence, this court cannot find such errors harmless. Accordingly, this case must be remanded to permit the ALJ properly to consider the medical opinion evidence.

**2.   Credibility**

Plaintiff also contends that the ALJ erred by discounting her credibility. The Appeals Council ordered the ALJ to provide specific reasons, supported by the evidence of record, for concluding Plaintiff's testimony is not credible. (Tr. 46.) On remand, the ALJ found that Plaintiff's subjective complaints about the extent of her functional limitations not fully credible. (Tr. 25.) In determining Plaintiff's credibility, the ALJ relied in part upon his interpretation of the medical evidence. The ALJ stated that Plaintiff's testimony that she spends most of her days in bed due to knee, hip and back pain was not credible because "the objective evidence here fails to support the need to lay supine for most of a day." (Tr. 25.) In support of this conclusion, the ALJ cited the lumbar MRI from September 2005, and hip and knee x-rays. (Tr. 25.) Again, an ALJ may not substitute his interpretation of laboratory reports for that of physician. *Ferguson*, 765 F.2d at 37. It was error for the ALJ to rely upon his own interpretation of the objective tests, in lieu of obtaining medical testimony from an expert.

Additionally, in determining Plaintiff's credibility, the ALJ relied in part upon the fact that Plaintiff was not taking medication. (Tr. 25.) Plaintiff testified she is without insurance and cannot afford to see a doctor. (Tr 271.) Although the Ninth Circuit has held that an unexplained, or inadequately explained, failure to seek treatment can cast doubt on the sincerity of a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

claimant's pain testimony, *Fair*, 885 F.2d at 603, a lack of treatment is not held against the claimant when the record indicates that claimant could not afford it. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding that because the claimant testified that "she had no insurance and could not afford treatment," her failure to comply with medication for her symptoms "is not a clear and convincing reason for discrediting her symptom testimony"). In discounting Plaintiff's credibility, it was error for the ALJ to rely upon Plaintiff's lack of medication. Plaintiff's credibility should be re-evaluated upon remand.

**3. Remand**

The decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *Harman*, 211 F.3d at 1175-78; *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *McAllister*, 888 F.2d at 603 (citation omitted); see also *Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("[G]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings . . . or where the record has been thoroughly developed.")

Here, the errors identified above can be remedied with further proceedings. On remand, the ALJ should address these errors by properly evaluating the medical evidence, including the opinions of Plaintiff's treating providers. Remand also is appropriate to allow

the ALJ to properly consider the Plaintiff's subjective complaints and to incorporate such consideration in evaluating the medical record and Plaintiff's functional limitations.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. Remand consistent with this decision is necessary. Upon remand, the ALJ shall reconsider Plaintiff's subjective complaints, the opinions of Drs. Schaaf and Yurasek, and shall consider the entire record. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 19)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 21)** is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED March 5, 2012.

              S/ CYNTHIA IMBROGNO
           UNITED STATES MAGISTRATE JUDGE